J-S28012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTONIO LEE BRETADO :
:
Appellant : No. 1838 MDA 2024

Appeal from the Judgment of Sentence Entered October 24, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000276-2024

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.: **FILED: OCTOBER 20, 2025**

Antonio Lee Bretado appeals from the judgment of sentence of twenty to forty years in prison, followed by two years of probation, imposed for multiple convictions related to the sexual assault of his minor sister. After careful review, we affirm.

On the morning of February 6, 2024, then-twenty-one-year-old Appellant was at home with his mother ("Mother"), step-father, and siblings. His two brothers were getting ready for school, while his younger sister planned to stay home because she had been sick the day before. That day, however, she was feeling energetic as normal. The girl, who was born in July 2017, was diagnosed as having non-verbal autism. After Appellant's brothers left for school and his step-father went to work, Mother ran an errand leaving Appellant alone with his sister for approximately forty-five minutes around

lunchtime. The girl was not potty-trained and required diapers, which only Mother was supposed to change. When Mother returned, she noticed that the daughter did not act excited like she typically would, and her hair was wet. Appellant explained that he showered the sister because she had a dirty diaper.

At around 2:00 p.m., when Appellant's brothers returned home from school, one of the brothers, who also had autism, was playing with the sister for approximately fifteen minutes. He was verbal, but very sensitive to physical contact and did not like being touched. The girl began to cry, so Mother took her away to change her diaper. Mother, however, noticed blood on the daughter's inner thigh and "a big clot coming out of her vaginal area." *See* N.T. Trial, 6/12-13/25, at 62. She immediately took the girl to the Children's Hospital of Philadelphia ("CHOP"). On the way, the victim bled through her diaper.

Once at CHOP, the girl had to be put under general anesthesia for the examination and required emergency surgery. It was discovered that she had a "complete transection of the hymen" and a laceration in the vaginal area. *Id*. at 124. Corporal Karl Harig of the Tamaqua Police Department responded to the potential sexual abuse call at CHOP. Following a discussion with Mother, he initially suspected that Appellant's brother, who had been alone with her immediately before Mother discovered the blood, was responsible for the victim's injuries. Mother did not believe that he could have done this because

- 2 -

he had an aversion to physical touch, and the clot was too large to have formed within fifteen minutes. Corporal Harig attempted to interview the younger brother at CHOP, but had difficulty communicating with him.

During the investigation, Corporal Wesley Levan of the Pennsylvania State Police became involved and was tasked with conducting a series of interviews. During Appellant's interview, he confessed to injuring his sister through digital penetration. Appellant admitted to the crime in multiple subsequent video-recorded interviews. Corporal Levan informed Corporal Harig of Appellant's confessions, and Corporal Harig thereafter conducted his own interview. On video, Appellant again explained his involvement and also signed a written statement.

Based on the aforementioned events, Appellant was charged with two counts of aggravated indecent assault of a child,[1] and one count each of aggravated indecent assault of a person less than thirteen years of age, indecent assault of a person under thirteen years old, corruption of minors, indecent assault of a person with a mental disability, and endangering the welfare of a child. Appellant filed several motions *in limine*, including a request to bifurcate the trial based on the *corpus delicti* rule, which the court denied,

---

[1] One of the charges was premised on lack of consent, and the other was based upon the victim's mental disability. **See** 18 Pa.C.S. § 3125 (a)(1), (6), (b).

stating that it would give a relevant jury instruction concerning that evidentiary doctrine. *See* Order, 5/28/24, at ¶ 5.

The matter proceeded to trial. The Commonwealth introduced the testimony of Mother, Appellant's step-father, Candance LeFlame, D.O., an expert in child abuse, and Corporal Harig to establish that the victim suffered a sexual injury and the extent thereof. The Commonwealth then called Corporal Levan, who explained his involvement in the case. Before the jury was presented with the video-recorded interviews by him of Appellant, the court issued the promised jury instruction regarding the *corpus delicti* rule. The jury was then shown the interview videos. The Commonwealth recalled Corporal Harig to play his recorded conversations with Appellant and to present the written confession. The Commonwealth also recalled Mother, and she recounted a conversation she had with Appellant after he confessed wherein she told him that she could not forgive him for his crimes, and he admitted that he could not forgive himself either. Appellant did not testify, but his defense was that his brother, not he, committed the assault.

The jury convicted Appellant of all charges except for endangering the welfare of a child, and the court deferred sentencing to obtain a pre-sentence investigation ("PSI") report. At the ensuing sentencing hearing, Appellant's counsel stated that Appellant was remorseful, did not have a prior criminal history, was still a young man, and had aspirations outside of prison. *See* N.T. Sentencing, 10/24/24, at 9-10. Appellant exercised his right to

allocution, maintaining that he did not commit these crimes and his brother was responsible. *Id*. at 10-16. The court imposed the standard ten-year minimum sentence for the two counts of aggravated indecent assault of a child and ran them consecutively. The remaining terms of incarceration were run concurrently, and the court imposed a consecutive two-years of probation for the corruption of minors offense. The court stated that a consecutive sentence for the two counts of aggravated assault was appropriate for the protection of the public and Appellant's rehabilitative needs. *Id*. at 16-17.

Appellant filed a post-sentence motion seeking a hearing. *See* Motion to Reconsider Sentence, 11/1/24. The court granted the request, and at the hearing Appellant asserted that the court should have imposed concurrent, rather than consecutive, sentences for the aggravated assault convictions. *See* N.T. Motion for Reconsideration, 1/17/25, at 3. He essentially reiterated the position that he deserved a lesser sentence based on his age, lack of prior offenses, and business aspirations. *Id*. at 3-4.

The court denied the motion and this timely appeal followed. Appellant and the court complied with the requirements of Pa.R.A.P. 1925. He raises the following issues for our consideration, which we have reordered for ease of disposition:

1. Whether the Commonwealth provided sufficient evidence to support a conviction for two counts of aggravated indecent assault of a child?

2. Whether the Commonwealth provided sufficient evidence to support a conviction for a conviction [*sic*] of corruption of minors?

3. Whether the trial court erred in denying Appellant's motion *in limine* to bifurcate the issue of *corpus delicti*, thereby preventing the jury from first determining whether the *corpus delicti* was proven beyond a reasonable doubt before considering Appellant's statements and subsequently determining guilty beyond a reasonable doubt.

4. Whether the trial court erred in permitting the Assistant District Attorney to argue facts not in evidence during closing argument over Appellant's objection?

5. Whether the sentence imposed was excessive to the degree that it amounted to an abuse of discretion?

Appellant's brief at 6-7.

Appellant's first two questions relate to the sufficiency of the evidence. In the brief, however, counsel asserts that "pursuing argument on those two issues would be frivolous." **See** Appellant's brief at 20. Specifically, Appellant's attorney maintains that sufficient evidence supported the jury's verdicts. **Id**. at 21-23. Since counsel has not petitioned to withdraw from representation, such an assertion is improper.

In **Commonwealth v. Morrison**, 173 A.3d 286 (Pa.Super. 2017), this Court made clear that an appellate brief should not "present issues that counsel, in his or her professional judgment, has determined to be frivolous, even if the client indicates he or she wishes those issues to be included." **Id**. at 293. We explained that frivolous issues are suited for applications to withdraw from representation, which are only appropriate where counsel has

determined, after a "conscientious examination," that the appeal is "**wholly frivolous.**" *Id*. (emphasis in original).  In that circumstance, counsel "must seek to withdraw from representation on appeal by using the procedure outlined by the United States Supreme Court and our Supreme Court." *Id*. On the other hand, if an attorney does not wish to withdraw from representation, counsel should exercise professional judgment and "must only raise and/or brief the issues that counsel believes, consistent with counsel's ethical duty, to be nonfrivolous." *Id*.

We further explained that if an appellant disagrees as to which issues should be presented "prior to counsel's filing of briefs, the appellant is free to petition for the withdrawal of counsel in order for the appellant to attempt to proceed *pro se* or with privately-retained counsel." *Id*.  However, "[i]f the disagreement arises after briefs have been filed by appointed counsel, and the appellant remains convinced of the merit of his or her proposed issues, the appellant may later challenge the effectiveness of his or her appellate counsel in a timely-filed collateral attack pursuant to the [Post Conviction Relief Act ('PCRA')]." *Id*.

Here, counsel has impermissibly presented this Court with ostensibly frivolous issues in an appellate brief otherwise advocating for relief.  *See* Appellant's brief at 20-23.  This was improper since counsel did not conclude that the appeal was wholly frivolous.  *See Morrison*, 173 A.3d at 293. Instead of advocating against her client, counsel ought to have used her

professional judgment to simply refrain from developing these claims in the brief. *Id*. Accordingly, we will not address the issues counsel deems frivolous. If Appellant believes that these assertions have arguable merit, he may present an ineffective assistance of counsel claim in a timely PCRA petition. *Id*.

Shifting to the remaining contentions, we begin with the court's denial of Appellant's motion to bifurcate the trial based upon the *corpus delicti* rule. The following legal precepts guide our analysis:

> The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Hernandez***, 39 A.3d 406, 410–11 (Pa.Super. 2012) (cleaned up).

Appellant maintains that "[a] bifurcated trial would have required the Commonwealth to present evidence establishing that a crime occurred first, before presenting [his] admissions and confessions[.]" Appellant's brief at 33. He argues that by denying his motion to bifurcate, "the trial court failed to adhere to the procedural safeguards intended to prevent convictions based solely on confessions or admissions without independent proof of a crime." *Id*. Appellant avers that separating the trial into stages, where the Commonwealth first presented testimonial evidence from multiple witnesses establishing that the victim suffered a sexual injury, before presenting Appellant's recorded confessions, "did not cure the defect." *Id*. at 34. Finally, he does not believe that the trial court's *corpus delicti* instruction was an appropriate remedy. *Id*.

The court explained that it denied Appellant's motion to bifurcate the trial and instead had the Commonwealth "establish the elements of the crime first through their witnesses prior to presenting the confessions and written statements of Appellant." Trial Court Opinion, 2/12/25, at 7. It explained that "[t]his meant that a few witnesses were recalled by the Commonwealth at the end of their case to effectuate this." *Id*. at 8. The court believed that "[t]he Commonwealth certainly established to the [c]ourt's satisfaction that the crimes were committed by a preponderance of the evidence prior to the statements being admitted into evidence." *Id*. Additionally, the court "read the standard jury instruction for *corpus delicti*, instructing the jury that they

must find, beyond a reasonable doubt, that a crime had occurred, prior to considering Appellant's statements." *Id*.

The court's determinations are supported by the record. Appellant cites no caselaw requiring a court to bifurcate a trial where a confession is involved. The safeguards of the *corpus delicti* rule were respected here where the Commonwealth presented multiple witnesses to establish that the victim had suffered severe sexual abuse that required surgery, which clearly indicated that a crime had occurred, prior to the introduction of Appellant's confessions. *See Hernandez*, 39 A.3d at 410-11. Additionally, before the jury watched the videos and read Appellant's sworn statement, the court issued the standard instruction for the *corpus delicti* rule, which the jury presumptively obeyed. *See Commonwealth v. Tyson*, 119 A.3d 353, 360 (Pa.Super. 2015) ("Jurors are presumed to follow the trial court's instructions." (cleaned up)). Therefore, this argument likewise lacks merit.

Appellant's next challenge concerns the Commonwealth's purported misconduct during closing statements, which we review for an abuse of discretion. *See Commonwealth v. Rodriguez*, 340 A.3d 334, 341 (Pa.Super. 2025) (cleaned up). "[A]ny challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered." *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa.Super. 2016) (cleaned up). We are tasked with evaluating "whether a defendant received a fair trial, not a perfect trial." *Id*. Prosecutorial

- 10 -

misconduct only takes place where "the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." ***Commonwealth v. Santiago-Burgos***, 314 A.3d 535, 548 (Pa.Super. 2024) (cleaned up). Additionally, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." ***Id***. Lastly, a trial court "may remove taint through curative instructions," and this Court must "consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." ***Commonwealth v. Caldwell***, 117 A.3d 763, 774 (Pa.Super. 2015).

Appellant takes issue with the following statement given during closing arguments: "How did that blood clot get there? Was it Appellant's brother? No. It was a clot. It was a large clot. Clotting takes time. Who was with her about two hours before? Perfect amount of time for a clot to form. It was Appellant." Appellant's brief at 29-30 (quoting N.T. Trial, 6/12/24, at 237) (cleaned up). Appellant acknowledges Mother's testimony that the victim had a large enough blood clot that would not have formed within the time that the younger brother spent with the sister, but states that Dr. LeFlame, the expert witness, did not attest to the amount of time it would take for a blood clot to form. ***Id***. at 30. He claims that the statement was prejudicial because "it had

the potential to influence the jury's determination of guilt or innocence" by "directly contradict[ing] Appellant's line of defense that [his younger] brother was responsible for [the] injury sustained[,] which deprived [him] of a fair and impartial determination of guilt or innocence." *Id*. at 31.

The court explained that it overruled Appellant's objection to the prosecutor's statement because the Commonwealth had "referred to the large blood clots found in the victim's vaginal area and in her pull ups, which were testified to by both the victim's mother and Dr. LeFlame." Trial Court Opinion, 2/12/25, at 6. Consequently, the court stated, the Commonwealth made an "inference" that "it takes time for blood to clot." *Id*. The court further instructed the jury that "the arguments of the attorneys are not evidence" and it should "only be guided by each side's arguments to the extent they are supported by the evidence." *Id*. at 6-7. Hence, it concluded, "the comments made about blood clots by the Assistant District Attorney were simply an inference he deduced from the evidence, and regardless, the jury was properly instructed they were the sole decider of fact and to only consider the arguments of the attorneys as much as they were supported by the evidence." *Id*. at 7.

The court's analysis is apt. Mother and Dr. LeFlame attested to the size of the clot, and Mother specifically stated that she did not believe that a clot of that size could have formed within the short amount of time that the younger brother was playing with the sister. *See* N.T. Trial, 6/12-13/24, at

75. Thus, the Commonwealth made a reasonable inference based upon the evidence. **See Santiago-Burgos**, 314 A.3d at 548. Moreover, the court instructed the jury that it was the ultimate fact finder and must only contemplate the arguments made during closing if they were supported by the evidence. **See Caldwell**, 117 A.3d at 774. This assertion warrants no relief.

Appellant's final issue concerns the discretionary aspects of his sentence. Such attacks are not appealable as of right. Instead, to invoke this Court's jurisdiction, an appellant must satisfy the following four-pronged test by demonstrating that he: "(1) timely appealed; (2) properly preserved his objection in a post-sentence motion; (3) included in his brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal; and (4) raised a substantial question that the sentence is inappropriate under the Sentencing Code." **Commonwealth v. Strouse**, 308 A.3d 879, 882 (Pa.Super. 2024). In his brief, Appellant asserts that the court abused its discretion in imposing consecutive sentences on his aggravated assault convictions without considering mitigating factors. **See** Appellant's brief at 26.

Appellant has met the first element of the test by filing a timely appeal. With respect to the second prong, we note that "issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings.

Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Perzel*, 291 A.3d 38, 47 (Pa.Super. 2023). An appellant must "give the trial judge an opportunity to reconsider or modify the sentence imposed[,]" and the "failure to do so deprives the trial court of this chance." *Id*. at 48. Additionally, "a post-sentence motion only preserves challenges to the discretionary aspects of sentencing that are specifically included in the post-sentence motion." *Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa.Super. 2018).

Appellant declined to present a written argument within his post-sentence motion. Rather, he requested a hearing to assert his claims therein. *See generally* Motion to Reconsider Sentence, 11/1/24. At that hearing, he alleged that he should have received concurrent, rather than consecutive, sentences for his aggravated assault crimes based upon certain mitigating factors. *See* N.T. Motion for Reconsideration, 1/17/25, at 3-4. Although Appellant failed to assert this argument with particularity in the post-sentence motion, in accordance with the above principles, we will consider the issue preserved for purposes of appeal because the trial court had an opportunity to address it.[2] *See Perzel*, 291 A.3d at 47.

---

[2] Appellant also seeks relief on the basis that the court considered impermissible factors during sentencing. He raises this contention for the first time on appeal and, thus, it has not been preserved. *See Williams*, 198 A.3d at 1186.

- 14 -

As to the third element of the test, Appellant included a Rule 2119(f) statement in his brief but erroneously affixed it to his merits argument. **See** Appellant's brief at 23-27. Nevertheless, where the Commonwealth does not object to an appellant's failure to comply with Rule 2119(f), the noncompliance will not automatically result in waiver. **See Commonwealth v. Kurtz**, 294 A.3d 509, 535 (Pa.Super. 2023). Here, the Commonwealth has not objected to this error. **See** Commonwealth's brief at 2 (relying upon the trial court's opinion as to Appellant's discretionary aspect of sentencing issue). Accordingly, we will address whether Appellant's Rule 2119(f) statement raises a substantial question.

As mentioned, Appellant argues that the court abused its discretion in issuing a consecutive sentence. This Court has held that, generally, "the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." **Commonwealth v. Morrobel**, 311 A.3d 1153, 1157 (Pa.Super. 2024) (citation omitted). However, we have held that where an appellant has asserted that the court failed to consider mitigating factors in conjunction with a claim that a court abused its discretion in issuing consecutive sentences, he has raised a substantial question. **Id**. at 1157-58.

Here, Appellant insists that the court should have issued concurrent sentences on the two counts of aggravated indecent assault of a minor and cites multiple mitigating circumstances that he believes would have warranted

a lesser sentence. *See* Appellant's brief at 26-27. Therefore, he has raised a substantial question, and we will address the merits. *See Morrobel*, 311 A.3d at 1157-58.

This Court has explained that "we will not disturb a sentence absent a manifest abuse of discretion, which will only be found where the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Ratliff*, 328 A.3d 1042, 1056 (Pa.Super. 2024). The court must impose a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

When a sentence is within the standard range of the sentencing guidelines, "Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.Super. 2019). Additionally, where the court has a defendant's PSI report, "the court is presumed to have weighed all relevant information regarding the defendant's character against any mitigating factors." *Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa.Super. 2020).

Appellant argues that his sentence is "excessive and manifestly unreasonable" because he "set forth goals and aspirations to better himself . . . during his allocution." Appellant's brief at 27. He acknowledges

that he has not taken responsibility for the crimes, but points out that he expressed "fear" to the court that the victim was still living with "the true perpetrator[.]" *Id*. Finally, he highlights that he was only twenty-one years old at the time of sentencing and had never been convicted of a prior crime. *Id*.

The trial court stated its reasoning for Appellant's sentence as follows:

The harm caused to the victim in this case was horrific. A sexual assault to a mentally disabled six[-]year[-]old child that required extensive surgery and recuperation in a hospital specializing in pediatric sexual assault is an especially egregious crime. In addition to the specific acts and injury caused, Appellant's statement at the time of sentencing was an incoherent, rambling statement of a very distorted view of reality. It concerned th[e c]ourt deeply that Appellant very clearly committed these egregious acts, and yet, rather than speak of remorse, or of the impact of these events on the victim whatsoever, he spoke entirely about himself. Appellant's attempt to recant his four confessions and blame his brother for his actions just did not add up. Appellant appear[ed] to have a complete disconnect with reality, the severity of the situation at hand, and the trauma to his little sister and his family. The court [wa]s extremely concerned for the safety of the public if Appellant [wa]s sentenced to anything shorter than what was imposed. The court's intention was to incarcerate Appellant for a lengthy period of time to protect to [*sic*] the public and give him time to be rehabilitated and receive mental health sexual offender treatment. The court was bound to impose the mandatory minimum sentences on the aggravated indecent assault of a child [convictions]. The only question for the court was whether or not to run these sentences concurrent. After considering the totality of the circumstances, the court felt it necessary to impose a consecutive sentence to achieve these goals. The sentence was appropriate considering the gravity of the offense.

Trial Court Opinion, 2/12/25, at 5-6 (some capitalization altered).

- 17 -

The court's reasoning is sound and supported by the record. Appellant exercised his right to allocution and refused to take responsibility for the crimes despite his multiple confessions. *See* N.T. Sentencing, 10/24/24, at 10-16. Instead, he attempted to blame his younger brother. *Id*. The court appropriately considered Appellant's lack of remorse, the severity of the convictions, and Appellant's need for rehabilitation in issuing consecutive sentences. *See* 42 Pa.C.S. § 9721(b); N.T. Sentencing, 10/24/24, at 16-17. Moreover, the court's sentence was presumptively reasonable where it imposed a standard-range sentence and had the benefit of a PSI report. *See* *Hill*, 210 A.3d at 1117; *Mulkin*, 228 A.3d at 917. This argument is meritless.

In sum, we decline to address the issues concerning the sufficiency of the evidence that counsel improperly presented to this Court with argument against his client's position, although counsel did not deem the appeal wholly frivolous and did not seek leave to withdraw. Concerning the issues for which counsel supplied advocacy, we discern no abuse of discretion in the trial court rejecting his request to bifurcate his trial based on the *corpus delicti* rule, overruling Appellant's objection to a portion of the Commonwealth's closing statement, and imposing consecutive sentences of imprisonment. Thus, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2025